Carletha Y. JOHNSON, Plaintiff,

v.

**NORTHERN INDIANA PUBLIC SERVICE COMPANY and Christine Griffiths, et al., Defendants.**

Civ. No. 2:93–CV–142–RL.

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 11, 1994.

Douglas M. Grimes, Gary, IN, for plaintiff.

Carletha Y. Johnson, pro se.

Terry J. Smith and Heather C. Sawyer, Schiff Hardin and Waite, Chicago, IL, for defendants.

### *ORDER*

LOZANO, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss and to Strike First Amended Complaint, filed November 29, 1993, and Plaintiff's Motion for Leave to File Second Amended Complaint. For the reasons set forth below, Defendants' Motion to Dismiss and to Strike is hereby **GRANTED,** and Plaintiff's Motion for Leave to File Second Amended Complaint is **DENIED.**

*BACKGROUND*

On or about May 13, 1993, Plaintiff, Carletha Y. Johnson ("Johnson"), brought this Title VII action, *pro se,* against her employer, Northern Indiana Public Service Company ("NIPSCO"), and her supervisor, Christine Griffiths ("Griffiths"), alleging that on July 30, 1991, she was terminated from her position as a part-time customer service repre-

sentative on the basis of her race in violation of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et. seq.* Prior to filing this Complaint, Johnson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The charge was mailed to Christine Griffiths, Supervisor; NIPSCO; 200 North Main Street; Hobart, Indiana, 46405. The EEOC form provides a space to name "THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME." In this space, Johnson indicated "Northern Indiana Public Service Company." However, in the space provided for specifying the particulars of the charge, Johnson specifically named Griffiths and described the alleged discriminatory action committed by Griffiths.

Defendants filed a motion to dismiss and to strike on July 14, 1993, arguing that Griffiths should be dismissed from the suit and Johnson's claim for compensatory and punitive damages should be stricken from the Complaint. On September 28, 1993, Attorney Douglas M. Grimes entered his appearance for Johnson. On October 13, 1993, Johnson then filed a motion for enlargement of time to respond to Defendants' motion to dismiss and strike, motion for summary ruling, discovery, and holding a joint meeting. This Court granted the motion, giving Johnson leave to respond by November 5, 1993. Johnson did not respond to Defendants' motion to dismiss and to strike; instead, on November 12, 1993, she filed a motion to amend her Complaint. This Court granted Johnson's motion on November 12, 1993, thereby mooting Defendants' prior motion to dismiss and to strike.

In the Amended Complaint, Johnson alleges that Defendants violated her civil rights under 42 U.S.C. § 2000, *et seq.* ("Title VII") and 42 U.S.C. § 1981. Specifically, she contends that Defendants impermissibly denied her the right to attend and receive mandatory training for the position of permanent part-time customer service representative based on her race. Moreover, Johnson asserts that Griffiths made a recommendation, which was subsequently acted upon by NIPSCO, that Johnson be terminated due to her race. Johnson asserts a right to trial by jury and a claim for punitive damages in addition to other requested relief.

On November 29, 1993, Defendants filed a Motion to Dismiss and to Strike First Amended Complaint. Defendants argue that the Title VII claim against Griffiths should be dismissed because Johnson did not name Griffiths as a respondent in her underlying charge of discrimination filed with the EEOC. In the alternative, they argue that she should be dismissed from the suit because she is not personally liable under Title VII. Defendants also assert that Johnson's claims for punitive damages and trial by jury should be stricken because the alleged discriminatory conduct occurred in July 1991, prior to the November 1991 amendment of the Civil Rights Act ("the Act") which permits trial by jury and punitive damages. Finally, Defendants contend that Johnson's § 1981 claim should be dismissed because allegations of discriminatory training and discharge are not actionable under § 1981 as the law existed in July 1991.

Johnson had fifteen (15) days to respond to Defendants' Motion to Dismiss and to Strike. *See* Local Rule 7.1. Johnson failed to respond within that time frame. Instead, on December 23, 1993, she filed a Verified Belated Motion for Enlargement of Time to Respond to Defendant's Motion to Dismiss and to Strike. This Court denied the Motion because Johnson already has been given several continuances in this matter. As provided by Local Rule 7.1, "[f]ailure to file an answer brief or reply brief within the time prescribed shall be deemed a waiver of the right to make such filing and shall subject the motion to summary ruling."

On February 2, 1993, Johnson filed a Motion for Leave to File Second Amended Complaint as well as a Response to Defendant's Motion to Dismiss and to Strike. As Johnson's Response is untimely, this Court orders her response stricken from the record. In addition, because this Court finds little, if any, difference between her First Amended Complaint and her Second Amended Com-

plaint, Johnson's Motion for Leave to File Second Amended Complaint is **DENIED.**

*DISCUSSION*

■ When deciding a motion to dismiss, this Court must assume the truth of a plaintiff's well pleaded factual allegations, making all possible inferences in the plaintiff's favor. *Prince v. Rescorp Realty*, 940 F.2d 1104, 1106 (7th Cir.1991); *Janowsky v. United States*, 913 F.2d 393, 395 (7th Cir.1990). This Court may not dismiss the plaintiff's complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle her to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *See also Barnhart v. United States*, 884 F.2d 295, 296 (7th Cir.1989), *cert. denied*, 495 U.S. 957, 110 S.Ct. 2561, 109 L.Ed.2d 743 (1990). In order to prevail, the defendant must demonstrate that "the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987).

*Motion to Dismiss Defendant, Christine Griffiths*

■ Defendants argue that Griffiths should be dismissed from this suit because she was not named in the EEOC charge. Additionally, they contend that she should be dismissed from the suit because she cannot be held individually liable as a mid-level supervisor under Title VII. As this Court agrees with Defendants' second proposition, it need not address Defendants' first argument.

Title VII gives an employee the right to sue an "employer" for discrimination. 42 U.S.C. § 2000e, *et seq.* (1981) Pursuant to 42 U.S.C. § 2000e(b), an "employer" is defined as "[a] person engaged in an industry affecting commerce who has 15 or more employees ... and any agent of such a person...."
Reading the Complaint with all possible inferences in Johnson's favor, Griffiths could be considered an agent of NIPSCO because she allegedly made recommendations regarding Johnson's termination. The issue before this Court, however, is whether the "and any agent of such a person" language subjects supervisors to individual liability as "employers" under the statute.

The Seventh Circuit has not explicitly indicated whether supervisors are employers within the meaning of Title VII; however, it has upheld personal liability against supervisors in Title VII cases without comment. *See, e.g. Gaddy v. Abex Corp.*, 884 F.2d 312, 318–19 (7th Cir.1989) (upholding personal liability for decision-making supervisor). Moreover, other circuit courts conflict on the issue. Some circuit courts have held that supervisors can be individually liable under Title VII by reading the "and any agent of such a person" language to mean that "agents" also should be considered employers under the statute. *Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989), vacated in part, 900 F.2d 27 (4th Cir.1990); *see also Jones v. Continental Corp.*, 789 F.2d 1225, 1231 (6th Cir.1986) (private citizens are proper defendants as "agents" of an employer under Title VII). Other circuit courts have read this language similarly, holding that an individual qualifies as an employer if he or she serves in a supervisory position and exercises control over traditional employer functions such as hiring and firing. *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir.1993); *Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir.1990). However, in these circuits, supervisors are liable only in their official capacities. *Id.* The Ninth Circuit reads the "and any agent of such a person" language to incorporate *respondeat superior* into the statute and holds that supervisors cannot be held individually liable under Title VII. *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587–88 (9th Cir.1993).

District court judges in this circuit are divided on the issue as well. In *Weiss v. Coca Cola Bottling Co. of Chicago*, 772 F.Supp. 407, 411 (N.D.Ill.1991), Judge Duff held that a supervisor could be held liable only in his official capacity. Judge Duff reasoned that the damages available under Title VII, i.e. back pay and reinstatement, do not support the inference that supervisors should be held individually liable. *Id.* Judge Aspen also relied on this reasoning and found that high level officers in a company could not be held individually liable under Title VII. *Pe-*

*lech v. Klaff–Joss,* LP, 828 F.Supp. 525, 529 (N.D.Ill.1993). To support his conclusion, Judge Aspen adopted the Ninth Circuit's position that "[i]f Congress decided to protect small entities with limited resources from liability, it is inconceivable that it intended to allow civil liability to run against individual employees." *Id.* (quoting *Miller,* 991 F.2d at 587). Chief Judge Moran, however, employed a different approach and determined that individuals working as agents of larger institutions could be held individually liable under Title VII "based on individual acts distinct from institutional policy set by their superiors." *Vakharia v. Swedish Covenant Hosp.,* 824 F.Supp. 769, 784 (N.D.Ill.1993). Disagreeing with the argument that the remedy provisions of Title VII do not support individual liability against supervisory employees, Chief Judge Moran pointed out that:

> Title VII always has served two purposes: to compensate the victims of discrimination (at least with back pay, if not with full compensatory damages), and to deter discrimination in the future. To conclude that personal accountability of supervisory employees is unnecessary to reinstate victims or to award them their back pay is to neglect Title VII's broader goal of eradicating discrimination.

*Id.* (citations omitted).

Although this issue remains deeply divided in the circuit, this Court believes that the better position is that supervisors cannot be held individually liable under Title VII. While the plain wording of the statute deceptively suggests that "agents" are employers within the meaning of Title VII, a closer analysis of the language in the statute indicates that the more reasoned reading of the statute is that the "and any agent of such a person" language was meant to incorporate *respondeat superior* into the statute. The use of the conjunctive word "and," as opposed to the disjunctive word "or," supports the argument that Congress merely intended to incorporate *respondeat superior* into the statute. The treatise, *Statutes and Statutory Construction* (formerly *Sutherland Statutory Construction* ), indicates that "[i]t has been held that the disjunctive 'or' usually, but not always, separates words or phrases in the alternate relationship, indicating that either of the separating words or phrases may be employed without the other...." NORMAN SINGER, *STATUTES & STAT. CONST.* § 21.14 (5th Ed.1992); *See also Knutzen v. Eben Ezer Lutheran Housing Ctr.,* 815 F.2d 1343, 1349 (10th Cir.1987); *Ruben v. Secretary of Dept. of Health and Human Services,* · 22 Cl.Ct. 264, 266 (1991). Thus, if the word "or" had been drafted in § 2000e(b), it would mean that the "any agent of such a person" language could stand alone so that an employer would be defined to include any agent of a person engaged in an industry affecting commerce who has 15 or more employees. Use of the word "and," however, ties the "any agent of such a person" language to the previous language in the statute, suggesting that the "agent" language was not meant to stand alone in terms of defining an "employer" under the statute.

While the Seventh Circuit cautions courts not to rely too heavily on disjunctive form versus conjunctive form when deciding difficult issues, *see Kelly v. Wauconda Park Dist.,* 801 F.2d 269, 270 n. 1 (7th Cir.1986), this reading is bolstered by Congress' limitation of liability to persons who employ 15 or more employees. As other courts have indicated, it is inconsistent to believe that Congress intended to limit liability on the one hand while making agents individually liable on the other hand.

Finally, this Court is unconvinced that exempting supervisors from individual liability will lead to, as one court suggests, greater discrimination in the work place because supervisors will be encouraged to "believe that they may violate Title VII with impunity." *Hamilton v. Rodgers,* 791 F.2d 439, 443 (5th Cir.1986). While supervisors may be exempt from individual liability, their employer still can be held liable under Title VII. It may be presumed that employers do not wish to employ supervisors who discriminate and subject their employers to liability. Thus, supervisors hardly will be encouraged to violate Title VII by this ruling—potential termination from liable employers exists as an effective deterrent.

Therefore, this Court holds that supervisors cannot be held individually liable under

Title VII. Given that Griffiths is Johnson's mid-level supervisor, this Court finds that she cannot be held individually liable under Title VII and **GRANTS** the motion to dismiss her from this suit.

*Motion to Strike § 1981 Claim, Punitive Damages, and Trial By Jury*

■ In her Amended Complaint, Johnson alleges discriminatory training and discharge under § 1981, requests punitive damages, and asserts a right to trial by jury. The alleged discriminatory actions occurred in July 1991. Prior to the amendment of the Civil Rights Act, effective November 1991, a plaintiff was not entitled to trial by jury or punitive damages on civil rights claims. *See Mojica v. Gannett Co., Inc.,* 7 F.3d 552, 559 (7th Cir.1993), 42 U.S.C. § 2000e *et seq.* (1981). Moreover, charges of discriminatory training and discharge were not actionable under § 1981 prior to the 1991 amendment. *Patterson v. McLean Credit Union,* 491 U.S. 164, 171, 109 S.Ct. 2363, 2369, 105 L.Ed.2d 132 (1989); *McKnight v. General Motors Corp.,* 908 F.2d 104, 108–09 (7th Cir.1990). The question before this Court, however, is whether the 1991 amendment applies retroactively to cases in which the challenged conduct occurred prior to the 1991 amendment, but the complaint was filed after the law's enactment.[1] Defendants contend that the 1991 amendment does not apply retroactively to this situation, and this Court agrees.

Congress did not specifically indicate whether it intended the Civil Rights Act of 1991 to be applied retroactively; however, this issue is currently pending before the Supreme Court. *Landgraph v. USI Film Products, cert. granted,* —— U.S. ——, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993). In the meantime, the Seventh Circuit has addressed this issue in a trilogy of cases, finding that the Act does not apply retroactively to cases pending on appeal or before the trial court at the time the Act was enacted. *See Mozee v. American Commercial Marine Service Co.,* 963 F.2d 929 (7th Cir.1992) (substantive provisions of the Act do not apply to case pending on appeal during its enactment); *Luddington v. Indiana Bell Co.,* 966 F.2d 225 (7th Cir.1992) (Act applies only to conduct after enactment when case is brought prior to enactment); *Mojica v. Gannett Co., Inc.,* 7 F.3d 552 (7th Cir.1993) (Act does not apply to case pending before trial court during its enactment).

The Seventh Circuit first dealt with the retroactivity issue in *Mozee v. American Commercial Marine Service Co.,* 963 F.2d 929 (7th Cir.1992). Favoring a line of precedent that supports a presumption against retroactive application of newly enacted statutes, the Seventh Circuit held that substantive provisions of the Act do not apply to cases pending on appeal during the Act's enactment. The Court reasoned that it would be "unfair to make persons accountable for acts that did not violate statutory laws when they were performed." *Id.* at 939.

The Seventh Circuit revisited this issue in *Luddington v. Indiana Bell Telephone Co.,* 966 F.2d at 229–30, and found that the Act is "applicable only to conduct engaged in after the effective dates (plural because several sections carry different effective dates) in the Act, at least if the suit had been brought before the effective date." The court reasoned that the "traditional conception of the 'rule of law'" supports applying laws prospectively so that individuals can conform their conduct. *Id.* at 227–28. The court also discussed the impact that changes in sanctions can have on an individual's behavior:

> The amount of care that individuals and firms take to avoid subjecting themselves to liability whether civil or criminal is a function of the severity of the sanction, and when the severity is increased they are entitled to an opportunity to readjust their level of care in light of the new environment created by the change. That is the philosophy behind the ex post facto clause and also behind the interpretive principle that presumes that a new civil statute ap-

---

1. This Court has previously dealt with this issue and found that the Civil Rights Act of 1991 does not apply retroactively to cases in which the alleged discriminatory conduct occurred pre-enactment even though the Complaint was filed post-enactment. *Buggs v. Elgin, Joliet & Eastern Ry. Co.,* 824 F.Supp. 842 (1993). This Court revisits this issue to consider recent case law on the subject.

plies only to conduct that occurs after its effective date.

*Id. at 229.*

The *Luddington* decision, however, involved a case pending appeal during the Act's effective date. It was not until *Mojica v. Gannett Co.,* 7 F.3d at 558–59, that the Seventh Circuit determined that the Act also does not apply retroactively to cases pending before the trial court at the time of the Act's enactment. In *Mojica,* the Seventh Circuit determined that the compensatory and punitive damage provisions, as well as the right to trial by jury provision of the Act, do not apply retroactively and stated clearly that, "the time of conduct controls liability." *Id.*

In each of the Seventh Circuit decisions discussed above, the discriminatory conduct and the filing of the original complaint occurred before the Civil Rights Act was amended. In the case at hand, the alleged discriminatory conduct occurred prior to the Act's enactment, but the Complaint was filed after such date. However, this fact does not change the applicability of these holdings. The underlying reasoning in these decisions is that individuals should have the opportunity to conform their conduct to change in the law. Thus, the Seventh Circuit has focused on the time that the alleged discrimination took place, not the stage of the lawsuit. Consistent with such reasoning, this Court finds that the Civil Rights Act of 1991 does not apply retroactively to cases in which the alleged discriminatory conduct occurred pre-enactment even if the complaint was filed post-enactment. *See Redden v. WalMart Stores, Inc.,* 806 F.Supp. 210, 211 (N.D.Ind. 1992).

Because Johnson's Complaint alleges that the discriminatory conduct against her occurred in July 1991, prior to enactment of the amended Act, this Court finds that she is not entitled to trial by jury, punitive damages, nor can she state a claim for discriminatory discharge under § 1981. Therefore, Defendants' Motion to Strike those claims is hereby **GRANTED.**

*CONCLUSION*

For the reasons set forth above, Defendants' Motion to Dismiss Christine Griffiths is hereby **GRANTED.** The claim against her is **DISMISSED** with prejudice. Defendants' Motion to Strike § 1981 claim, punitive damages, and trial by jury from Complaint is also **GRANTED.** Plaintiff's Motion for Leave to File Second Amended Complaint is **DENIED.** Plaintiff's untimely Response to Defendant's Motion to Dismiss and to Strike is **ORDERED STRICKEN** from the record.