GTE NORTH, INC., Plaintiff

v.

COMMUNICATION WORKERS OF AMERICA, LOCAL 4773, Defendant.

No. 3:95–CV–354RM.

United States District Court, N.D. Indiana, South Bend Division.

Feb. 15, 1996.

Patrick J. Hinkle, Edward N. Kalamaros & Associates, South Bend, IN; William J. Campbell; David G. Lynch, Holly Hirst, and Steven L. Loren, Rudnick and Wolfe, Chicago, IL, for plaintiff.

Marvin Gittler, Stephen Feinberg, and Patricia A. Collins, Asher Gittler Greenfield Cohen and D'Alba, Chicago, IL, for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on the motions to dismiss and for sanctions filed by defendant Communication Workers of America, Local 4773. The plaintiff, GTE North, Inc., objects to both motions. For the reasons stated in this memorandum and order, the court grants the defendant's motion to dismiss, but denies the defendant's motion for sanctions.

### 1. Motion To Dismiss

Local 4773 seeks dismissal of GTE North's complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] When deciding a motion to dismiss brought pursuant to Fed.R.Civ.P. 12(b)(6), the court must assume the truth of the plaintiff's well-pleaded factual allegations and make all possible inferences in the plaintiff's favor. *Johnson v. Northern Indiana Public Serv. Co.*, 844 F.Supp. 466, 468 (N.D.Ind. 1994) (citing *Prince v. Rescorp Realty*, 940 F.2d 1104, 1106 (7th Cir.1991)). A complaint may be dismissed for failure to state a claim only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Hondo, Inc. v. Sterling*, 21 F.3d 775 (7th Cir.1994).

GTE brings this action pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, for breach of a collective bargaining agreement. The following allegations, which the court must accept

as true for the purpose of this motion, appear in GTE North's complaint. GTE North is a Wisconsin corporation, and is an employer within the meaning of § 101 of the LMRA. Local 4773 is a labor organization within the meaning of § 101 of the LMRA, and is affiliated with and is part of the Communication Workers of America ("CWA"). Local 4773's principal business is to represent employees, with respect to the terms and conditions of their employment, who work for employers who maintain collective bargaining relationships with Local 4773. Local 4773 is the exclusive bargaining representative of certain employees employed by GTE North.

On April 18, 1991, GTE North entered into a Memorandum of Agreement ("MOA") with the CWA with respect to GTE North's Indiana operations; this MOA was and is binding upon Local 4773. Under the terms of the MOA, the parties agreed upon a Home Dispatch Program under which specified types of employees could elect to receive a company vehicle to drive to and from their homes and assigned work locations and thereby avoid having to report to an employer facility prior to being dispatched to a customer location. Pursuant to ¶ 3 of the MOA, the time traveling to and from the employees' homes was not compensable.

The MOA was incorporated into a collective bargaining agreement ("CBA") entered into between GTE North and CWA on May 19, 1991, and the terms of the Home Dispatch Program are included in the CBA. Around August 12, 1994, GTE North and CWA reached agreement over terms for a new three-year CBA, the terms of which were ratified by and are binding on Local 4773 with regard to its members employed by GTE North. The 1994 CBA parties extended the Home Dispatch Program without modification for the term of the new agreement. Local 4773 is bound to the terms of

---

**1.** Fed.R.Civ.P. 12(b) provides that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented *and not excluded by the court*, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

(emphasis added). Both parties have submitted, by way of declarations, matters outside the pleadings with respect to the motion to dismiss, but neither have treated the motion as one for summary judgment. The court has not relied on the matters outside the pleadings in determining the motion to dismiss, and since it has excluded those filings the motion shall be addressed pursuant to Fed.R.Civ.P. 12(b)(6).

the 1994 CBA, and its terms control the terms and conditions of employment of the GTE North employees represented by Local 4773.

Approximately 130 GTE North employees represented by Local 4773, all working in Indiana, have elected to participate in the Home Dispatch Program subject to the terms and conditions specified in the CBA.

Local 4773, either directly or through its agents, has precipitated and encouraged its members to initiate a lawsuit against GTE North seeking a determination that the travel time incurred in connection with travel to and from each Home Dispatch participant's home and first and last work assignment is compensable under the terms of the Fair Labor Standards Act, 29 U.S.C. § 201. *et seq.* ("FLSA"). The lawsuit, which was filed on November 7, 1994, remains pending in this court under the caption *Teddy W. Baker, et al. v. GTE North, Inc.,* No. 3:94–CV–885RM. There are a total of eight individual plaintiffs in the *Baker v. GTE North* case.

Prior to the filing of the *Baker v. GTE North* lawsuit, Local 4773, "without prior notice to or consultation with" GTE North, sought an opinion from its law firm, Asher, Gittler, Greenfield, Cohen & D'Alba, as to whether travel time under the Home Dispatch Program is compensable. On October 18, 1994, the Asher firm rendered a written opinion, addressed to GTE North Home Dispatch Employees, that the firm believed the travel time was compensable under FLSA. The letter also explained the potential for filing a lawsuit, represented that the firm was experienced in such matters, and explained how interested employees could bring an action against GTE North. Consent forms for use by any employees that wished to participate in a lawsuit were attached to the letter.

The letter prepared by the Asher firm was forwarded to Local 4773, which in turn forwarded it to its members employed by GTE North in its Home Dispatch Program, doing so "without any prior notice to or consultation with GTE North."

The complaint concludes that by these actions, "Local 4773 has breached the terms of the collective bargaining agreement between GTE North and the CWA, the terms of which are applicable to and binding on Local 4773." More specifically, the complaint alleges that Local 4773 "has breached the obligations imposed upon it as a matter of law to deal fairly and in good faith with GTE North with regard to the parties' respective and mutual obligations arising out of the parties' collective bargaining agreement now in force and effect." As damages for this alleged breach, GTE North requests its costs and attorneys' fees which it has incurred and will incur in connection with the *Baker* lawsuit.

GTE North's claim is one for breach of contract under § 301 of the LMRA. The parties agree that "[f]ederal substantive law governs suits based on a collective bargaining agreement." *Peffley v. Durakool, Inc.,* 669 F.Supp. 1453, 1459 (N.D.Ind.1987).

"The Supremacy Clause of Art. VI of the United States Constitution grants to Congress the power to preempt state law. Congress exercised this power by enacting § 301(a) of the LMRA, 29 U.S.C. § 185(a)...." *Loewen Group Int'l, Inc. v. Haberichter,* 65 F.3d 1417, 1420 (7th Cir. 1995) (citations omitted). Section 301(a) of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of parties.

29 U.S.C. § 185(a). In addition to providing federal jurisdiction over actions involving collective bargaining agreements, § 301 authorizes federal courts to fashion federal common law for enforcement of these agreements. *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *see also Loewen Group Int'l, Inc. v. Haberichter,* 65 F.3d at 1421 ("This section provides federal court jurisdiction over controversies involving collective bargaining agreements and also authorizes federal courts to fashion a body

of federal law for the enforcement of those agreements."). A court must apply federal law when resolving such disputes to "ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Division of Magic Chef,* 486 U.S. 399, 404, 108 S.Ct. 1877, 1880, 100 L.Ed.2d 410 (1988) (*citing Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)); *see also Loewen Group Int'l. Inc. v. Haberichter,* 65 F.3d at 1421.

*Atchley v. Heritage Cable Vision Associates,* 904 F.Supp. 870, 874 (N.D.Ind.1995).

■ Thus, § 301 preempts state contract law and also preempts tort claims "so long as the claim is one in which 'state tort law purports to define the meaning of the contract relationship.'" *Smith v. Colgate–Palmolive Co.,* 943 F.2d 764, 767 (7th Cir.1991) (*citing Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985)). Again, the parties agree that this case is governed by the federal common law applicable to § 301 cases. Thus, if a cause of action exists for a breach of an implied duty "to deal fairly and in good faith" between parties to a collective bargaining agreement, that cause of action must exist as a matter of federal common law. For the purposes of this motion, Local 4773 apparently does not argue whether federal law recognizes such a general duty or such a cause of action, but rather is content to argue that even if the duty of good faith and fair dealing existed, its actions in this case could not possibly be construed to constitute a breach of that duty.

■ GTE North contends that only one conclusion is available from the facts alleged in the complaint: "Local 4773 directly or indirectly, in concert with its agent law firm, having first obtained the law firm's agreement to do so, engineered the filing of the

*Baker* litigation against GTE." Local 4773 does not contradict this version of the facts,[2] but rather it summarizes its position with respect to the motion to dismiss in its brief:

> It is impossible for GTE or its attorneys to legitimately believe that a federal common law implied into every collective bargaining agreement prohibits a labor union from advising its members (1) that a provision of their collective bargaining agreement may violate the FLSA; and/or (2) that the members may recover additional compensation and liquidated damages from their employer by filing a lawsuit; and/or (3) that particular attorneys are experienced in such matters and offer an economical means for the members to assert their rights Congress gave them in the FLSA; and/or (4) that the employer must be notified before a labor union may speak to its attorneys or members.

Local 4773 contends that to require a labor union to behave in such a way through the guise of an implied duty of good faith and fair dealing in a collective bargaining agreement would contravene its fiduciary duty to represent the interests of its members.

The duty of good faith and fair dealing that GTE North wishes to imply into the CBA is derived from the *Restatement (Second) of Contracts,* § 205, which provides that "[e]very contract imposes on each party a duty of good faith and fair dealing in its performance and enforcement."[3] From this, and from various case law, GTE North contends that Local 4773's actions violated three of its obligations arising from this implied duty: (1) "to abide by the terms of the GTE–CWA agreement in good faith"; (2) "to refrain from taking actions obviously intended to deprive Plaintiff of its 'right to receive the fruits of its contract'"; and (3) "to refrain from taking any action not contemplated by the spirit of the parties' agreement which

---

**2.** For the purposes of this motion, Local 4773 "accepts all of GTE's verbs to describe the Local's role in the *Baker* lawsuit. GTE uses many. It is understood that GTE's allegation that the Local 'engineered,' 'encouraged,' 'initiated,' 'instigated,' and/or 'precipitated' the *Baker* lawsuit is 'not denied.'"

**3.** The commentary to the *Restatement* notes that "good faith requires adherence to the agreed purpose of the contract and consistency with the justified expectation of the other party."

had just been entered into as of August 24, 1994."

▉ Local 4773 is a labor organization consisting of individual employee members. As argued by Local 4773, the relationship between a labor union and its members is akin to a fiduciary relationship: "Just as these fiduciaries [i.e., trustee, attorneys, corporate officers and directors] owe their beneficiaries a duty of care as well as a duty of loyalty, a union owes employees a duty to represent them adequately as well as honestly and in good faith." *Air Line Pilots Assoc., Int'l v. O'Neill,* 499 U.S. 65, 74–75, 111 S.Ct. 1127, 1134, 113 L.Ed.2d 51 (1991) (discussing duty of fair representation); *see, generally, Garcia v. Zenith Elec. Corp.,* 58 F.3d 1171, 1176 (7th Cir.1995) (noting the union's duty of fair representation to each of its members).

In this perspective, the court agrees with Local 4773 that it cannot conclude that Local 4773's actions, even if characterized as "instigating" or "precipitating" the *Baker* lawsuit, violated any implied duty of good faith and fair dealing. To do so would require the court to conclude that Local 4773 was required to act in concert with GTE North even if it had the good faith, honest belief that the CBA contained elements that violated the statutory rights of Local 4773's members. Such a conclusion would mean that Local 4773 owed a greater duty to GTE North, by virtue of terms implicit in the CBA, than it did to its own members, and thus breached that duty by representing the best interests of its members rather than the interests of GTE North. Local 4773 admits that it openly encouraged its members to file suit against GTE North to challenge the validity of the Home Dispatch Program in light of the requirements of FLSA. GTE North does not allege that this was done recklessly, negligently, in bad faith or with malice; GTE North merely alleges that Local 4773 did so "without prior notice to or consultation with" GTE North.[4] The court cannot embrace GTE North's contention that this behavior is actionable under § 301 of the LMRA.

GTE North supplied no case law supporting its theory. Although GTE North has cited authority for its general propositions of law,[5] it has not cited,[6] and the court has not found, a single case in which a union was held to have breached an implied duty of good faith and fair dealing in a context similar to this.

▉ GTE North readily admits that the *Baker* plaintiffs are free to litigate their claim regarding the validity of the Home Dispatch Program in this court, and does not argue that in so doing the employees have breached the CBA or any implied duties in CBA.[7] GTE North does contend, however,

---

**4.** This creates the question of whether GTE North would claim a violation of the implied duty of good faith and fair dealing if Local 4773 had notified and consulted with GTE North before contacting the Asher firm.

**5.** For example, GTE North contends that the following obligations are entailed in the implied duty: (1) to abide by the terms of the GTE–CWA agreement in good faith; (2) to refrain from taking actions obviously intended to deprive Plaintiff of its right to receive the fruits of its contract; and (3) to refrain from taking any action not contemplated by the spirit of the parties agreement which had just been entered into as of August 24, 1994. These statements of law appear sound in the abstract, but as applied to this case, the court cannot conclude that they serve to render Local 4773's actions actionable under § 301.

**6.** The court does not mean to suggest that it places the burden of establishing a legal basis for its claim on GTE North. *See, e.g., Yeksigian v. Nappi,* 900 F.2d 101, 104 (7th Cir.1990) ("The

defendants have the burden on a motion to dismiss to establish the legal insufficiency of the complaint."); *but cf. Stransky v. Cummins Engine Co., Inc.,* 51 F.3d 1329, 1335 (7th Cir.1995) (when presented with a motion to dismiss, "the non-moving party must proffer some legal basis to support his cause of action").

**7.** Specifically, GTE North states that its employees "were clearly free to institute a FLSA action on their own to challenge FLSA aspects of Home Dispatch without regard to the contract's grievance/arbitration provisions." Although this statement was limited to whether the employees were required to exhaust administrative remedies before filing the *Baker* suit, GTE North has not contended (at least in these pleadings) that those employees violated any implied duties by bringing the *Baker* action. *See, e.g., Barrentine v. Arkansas–Best Freight System,* 450 U.S. 728, 745, 101 S.Ct. 1437, 1447, 67 L.Ed.2d 641 (1981) (stating that rights under FLSA are not waivable by contract, and therefore "congressionally granted FLSA rights take precedence over con-

that Local 4773 has violated the CBA even though it has not sued GTE North over the validity of the contract. It is for this reason that GTE North's contention (not raised in the complaint) that Local 4773 has also violated the CBA by failing to exhaust its administrative remedies must fail. GTE North contends that Local 4773 was obligated to bring its concerns over the potential FLSA violations through the grievance/arbitration procedure established in the CBA. But even by GTE North's view of the grievance/arbitration provision in the CBA, this dispute would not fall under its scope. Even if Local 4773 "instigated" or "precipitated" the *Baker* suit, that suit was brought by individual employees to assert individual rights; Local 4773 did not bring, and could not have brought, the suit. A small number of Local 4773's members, and not Local 4773, are challenging the validity of the Home Dispatch Program in the *Baker* suit. Local 4773 has done nothing to bring it within the scope of the grievance/arbitration provision of the CBA. To find otherwise would be to conclude that Local 4773 was required to participate in the grievance/arbitration procedure before its members were able to assert their individual rights in their own lawsuit. A local union cannot deprive its members of the members' federal statutory rights through inattention to administrative remedies.

GTE North's complaint is founded upon the presumptions (1) that a duty of good faith and fair dealing is implied into every collective bargaining agreement, (2) that this duty in this case necessarily imposed on Local 4773 the obligation to abide by the terms of the GTE–CWA agreement in good faith, to refrain from taking actions obviously intended to deprive GTE North of the fruits of its contract, and to refrain from taking any action not contemplated by the spirit of the parties collective bargaining agreement, and (3) that, as a matter of law, Local 4773's actions in "instigating" the *Baker* lawsuit violated one or more of these obligations, rendering Local 4773 liable to GTE North for its costs and attorneys fees incurred defending the *Baker* action. Even when all of the complaint's factual allegations are taken

as true and viewed in the light most favorable to GTE North, and even when the implied duty is assumed to exist as a matter of law, the complaint states no claim upon which relief can be granted. No case of which this court is aware has previously determined, as a matter of federal common law, that the duty of good faith and fair dealing reaches so far so that it could essentially prohibit a union from representing the best interests of its members.

GTE North has not alleged an actionable claim against Local 4773. This conclusion does not mean that a collective bargaining agreement cannot contain an implied duty of good faith and fair dealing, or that the CBA in this case did not contain such an implied duty. The court merely finds, as a matter of law, that if this implied duty existed between GTE North and Local 4773, Local 4773's actions could not possibly be construed to have violated that duty. Local 4773's implied duties to GTE North cannot exceed its duties to its members.

The court declines GTE North's implicit invitation to extend, or create, federal common law to cover the facts of this case. Even when assuming the truth of the plaintiff's well-pleaded factual allegations and making all possible inferences in the plaintiff's favor, *Johnson v. Northern Indiana Public Serv. Co.,* 844 F.Supp. at 468, the court is left with the conclusion that it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson,* 355 U.S. at 45, 78 S.Ct. at 101–02; *Hondo, Inc. v. Sterling,* 21 F.3d 775. Accordingly, defendant Local 4773's Rule 12(b)(6) motion to dismiss must be, and hereby is, granted.

### 2. Motion for Sanctions

■ Local 4773 also seeks sanctions against GTE North, requesting an award of its attorneys' fees and costs incurred in bringing its motion to dismiss and its motion for sanctions. Local 4773 relies upon 28 U.S.C. § 1927 and the court's "inherent power to impose sanctions for bad faith abuse of

flicting provisions in a collectively bargained

compensation agreement.").

the judicial process." Sanctions are unwarranted on either basis.

Under section 1927 an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees incurred because of such conduct." 28 U.S.C. § 1927. We review an award of fees under section 1927 under an abuse of discretion standard. *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir.1988).

[A court may impose sanctions under § 1927 against an attorney where that attorney has] acted in an objectively unreasonable manner by engaging in a "serious and studied disregard for the orderly process of justice" ... or where a "claim [is] without a plausible legal or factual basis and lacking in justification." *Id.* (citations and emphasis omitted).

\* \* \* \* \* \*

Section 1927 sanctions should only be awarded when an attorney "unreasonably and vexatiously" multiplies the proceedings. 28 U.S.C. § 1927; *Ross v. City of Waukegan*, 5 F.3d 1084, 1089 n. 6 (7th Cir.1993); *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir.1992).

*Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119–20 (7th Cir.1994).

Local 4773 contends that sanctions are appropriate because the complaint was brought in bad faith and without any colorable basis in law.

If a legal theory advanced by an attorney is objectively colorable, then the party seeking sanctions pursuant to 28 U.S.C. § 1927 against that attorney must demonstrate subjective bad faith or malice on the part of that attorney to obtain sanctions. *See In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir.1985). In other words, sanctions are appropriate when an attorney pursues an objectively colorable legal theory solely to impose costs on the other side rather than to improve the client's chances of recovery. *Id.* On the other hand, if a legal theory is objectively colorable but is pursued for legitimate reasons, sanctions may be inappropriate even when the court ultimately rejects such a legal theory. *See Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 790–94 (7th Cir.1983). This is especially true where the legal issue has never been litigated before and is one of first impression. *Id.* at 794.

If a legal theory advanced by an attorney is objectively not colorable, then a court may impose sanctions on the attorney if the court finds that the attorney's conduct was reckless, indifferent to the law, or extremely negligent even though the attorney's actions were without actual or subjective bad faith. *See Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184–85 (7th Cir. 1992). However, sanctions are not appropriate for mere ordinary negligence. *Id.* Stated another way, a court may impose sanctions under 28 U.S.C. § 1927 against an attorney where the attorney has "acted in an objectively unreasonable manner by engaging in a 'serious and studied disregard for the orderly process of justice' ... or where a 'claim [is] without a plausible legal or factual basis and lacking in justification.'" *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir.1988) (citations omitted).

*United States v. Gritz Bros. Partnership*, 155 F.R.D. 639, 645 (E.D.Wis.1994).

Sanctions are inappropriate under § 1927. Although GTE North's complaint states no claim upon which relief can be granted, it presented at least a colorable, though unsuccessful, legal argument. Further, notwithstanding the various allegation made by Local 4773 that GTE North brought this case "in bad faith to retaliate against the Local" and to "deliver a message to other GTE local unions considering how to inform their GTE Home Dispatch members of their FLSA rights," the record does not support a finding that, in bringing this suit, GTE North's attorneys acted in an "objectively unreasonable manner by engaging in a 'serious and studied disregard for the orderly process of justice,'" or that they "unreasonably and vexatiously" multiplied the proceedings. *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d at 119–20.

■ Local 4773 also requests sanctions under the court's inherent power to impose sanctions for bad faith abuse of the judicial process. The Supreme Court clarified this

inherent power in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), concluding that a court may assess attorneys fees against a party who has " 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons' " or "if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled.' " *Chambers,* 501 U.S. at 46, 111 S.Ct. at 2133 (citations omitted). As the Seventh Circuit has noted, the Supreme Court also emphasized in *Chambers* "that the imposition of sanctions, including attorneys' fees, on the basis of the court's inherent power is to be undertaken with great circumspection." *United States v. Fidelity and Deposit Co. of Maryland,* 986 F.2d 1110, 1120 (7th Cir. 1993). Again, the record does not indicate that this action was brought in bad faith, nor was it brought or litigated "vexatiously, wantonly, or for oppressive reasons." Accordingly, the court denies Local 4773's motion for sanctions.

### 3. Conclusion

For the reasons stated in this memorandum and order, the court:

(1) GRANTS the defendant's motion to dismiss (filed July 6, 1995 (# 8)), and ORDERS that this cause be DISMISSED WITH PREJUDICE; and

(2) DENIES the defendant's motion for sanctions (filed July 6, 1995 (# 10)).

The clerk is directed to enter judgment for the defendant and against the plaintiff, with costs assessed against the plaintiff.

SO ORDERED.